STATE EX REL. MILSTED, RELATOR, v. BUTTE CITY
WATER COMPANY, RESPONDENT.

[Submitted April 9, 1896. Decided May 4, 1896.]

PLEADING—*Denial—Information and belief.*—Under the Code of Civil Procedure of 1887, (§ 89) providing that "if the complaint be verified the denial of each allegation controverted must be specific and be made positively or according to the information and belief of the defendant," a denial in a pleading that, as to a fact alleged, the pleader "has no knowledge or information upon which to found a belief and therefore denies the same," is insufficient to present an issue.

WATER COMPANIES—*Public purposes.—Unreasonable rules.*—A water company, organized under the statute for the purpose of supplying a city and its inhabitants with water, and having been granted a franchise for that purpose, assumes obligations of a public nature and must exercise its powers in a reasonable manner, and therefore, where the inhabitant of a city occupying premises as a tenant, and requiring water for general purposes, but whose lessor had refused to be responsible for water rents, requests the company to turn on the water at his premises and tenders payment in advance, the refusal of the company to do so, under a rule not to supply water to rented premises except on the personal responsibility of the owner, and that if the water was turned on the money tendered would be credited to the owner, is unreasonable.

*Appeal from Second Judicial District, Silver Bow County.*

MANDAMUS. The writ was made peremptory by SPEER, J. Affirmed.

Statement of the case by the justice delivering the opinion.

*Mandamus* to compel the respondent, defendant, to turn on the water for general use at a certain house in Butte.

The petitioner avers that he is a citizen and inhabitant of Butte; that the defendant water company is a corporation existing under the laws of Montana, engaged in supplying the inhabitants of Butte with water, under a certain franchise granted to the predecessor in interest of said corporation by the city of Butte; that by the terms of said franchise the corporation is granted the right to lay its mains in the streets and alleys of Butte, and is required to supply the inhabitants of Butte with water for general use at specified prices; that the defendant corporation is in full use and enjoyment of the franchise; that one Murray is the owner of the premises involved;

that on June 12, 1894, the said Murray gave to relator a written order to the defendant company, requesting it to turn on the water at the premises, and to charge the same to the relator; that the relator is the tenant in possession of said premises; that, on presenting said order, relator tendered to the water company $4.50, the amount allowed by the said franchise as water rents for the said premises for three months in advance, and demanded that the company turn the water on at said premises; that the premises are supplied with water pipes connected with the mains, and in proper condition to use water supplied by the said company; that the mains are supplied with water, but that the said premises are without water, because the company refused to accept the tender, or turn the water on at said premises; that there are no other means by which relator can secure water for said premises, unless his petition for a writ of *mandamus* is granted.

The respondent company answered, admitting that it is a corporation engaged in supplying the city of Butte and the inhabitants thereof with water, under a franchise, as set forth in the relator's petition. The answer admits the ownership of Murray, but pleads "that, as whether your relator is now a tenant in possession of the said premises, respondent has no knowledge or information upon which to found a belief, and therefore denies the same." It admits the presentation of the order and the demand for water, but alleges that it refused to turn on the water by virtue of its rules and regulations, by which it can deal only with the owners of property requiring water to be turned on, or the agents of such owners. The rule invoked by respondent is as follows: "The water company contracts with owners of property, or their authorized agents only, and the property is invariably held for water rent. When water is turned off for any cause, it will not be turned on again until all back rent due on that building is paid in full. Money paid by tenants will be credited to the owner, but in so doing the company does not in any way release the owner from liability under this rule."

Respondent further pleads that, when the premises involved

were connected with the mains, the owner, Murray, signed an application, requesting a supply of water for the property, subject to the rules and regulations of the respondent company, and that, when the said application was filed, the rule heretofore set forth was in force, and the said Murray knew it was in force. Respondent says that, when the relator made his demand that the water be turned on for said premises, he was notified that the company would deal only with the owner or his agent, and would not contract with the tenants to supply water to rented premises, except on the personal responsibility of the owner, and informed relator of the contents of the rule hereinbefore set forth. That the owner, Murray, at the time of relator's request that the water be turned on, refused to become personally responsible, or to allow his property to become responsible, for the payment of water rent; but that the respondent informed the relator that the money he tendered would be accepted, and the water turned on, but that the money so paid would be credited to the account of Murray, the owner of said premises. It is alleged then that the rule, as set forth, is reasonable and just, and without it the company cannot safely conduct its business; that, by virtue of its franchise, it supplies many of the inhabitants of Butte with water by meter measurement, and that, until the determination of the period for which a contract is made, and at which time the meters are read, it cannot determine what has been used, or to what amount the consumer is indebted to the company; that much property in Butte is occupied by tenants, and that, if respondent is obliged to deal with tenants, and look to them for pay of water, it would be subject to great loss and hardship; that it cannot, for reasons given, collect from the consumer in advance, and therefore is obliged to hold owners desiring water personally responsible.

Upon these pleadings the relator moved the court to make the alternative writ peremptory, notwithstanding the respondent's answer, for the reason that the matters set forth in said answer do not constitute a defense to relator's cause of action, or set forth any reason why said writ should not be made per-

emptory. The court granted this motion, and made the writ peremptory. The respondent appeals from the order sustaining the relator's motion to make the alternative writ peremptory.

*Corbett & Wellcome*, for Appellant.

*Geo. Haldorn* and *Oliver M. Hall*, for Respondent.

By the terms of the franchise appellant is required to supply the *inhabitants* of the city of Butte with water. By the terms of the rule in question the company is bound to refuse to supply an inhabitant of the city unless he is the owner of real estate. Conceding that respondent has the right to adopt reasonable rules for conducting his business, a rule that limits the class of persons to whom water will be supplied, to the owners of real estate is manifestly unreasonable. Where there is no such provision in the charter making a gas bill a lien on the real estate, it has been held that a gas company cannot refuse to furnish gas to a person because he refuses to pay a former bill, or a bill contracted on different premises. (*Gas Light Co. of Baltimore*, v. *Calliday*, 25 Md. 1; *Loyd* v. *Washington Gas Co.*, 1 Mackey (D. C.) 331.) Nor can it shut off the gas on the ground that there are arrears due from a former occupant of the premises. (*Morey* v. *Metropolitan Gas Co.*, 38 N. Y., Superior Court, 185.) Respondent further insists that the rule in question would not be binding upon him even if he stood in Murray's shoes. First for the reason that the rule is a limitation of the rights granted to the public by the terms of the franchise, and it is therefore void as being a rule of the company in contravention of the law that created it, and in derogation of the rights of the public. Second, because the rule in itself is not a reasonable one and the assent to it by Murray was without a valuable consideration, and would not be binding as a contract even on him. A promise to pay a person for doing what he is already bound to do is without consideration. (*Vanderbelt* v. *Schueyer*, 91 N. Y. 392; *Withess* v. *Ewing*, 40 Ohio St. 400; *Barlet* v.

*Wyman,* 14 Johns, (N. Y.) 260; *McCann* v. *Lewis*, 9 Cal. 246; *Hale* v. *Forbis*, 3 Mont. 395; Vol. 3, Am. & Eng. Ency. of Law, page 834 and cases cited in note 4.) It has been held that a gas company cannot refuse gas to a person on the sole ground that he refused to sign an agreement to accept gas subject to certain rules that were held to be unreasonable. (*Shephard* v. *Milwaukee Gas. L. Co.*, 6 Wis. 539; 70 Am. Dec. 479; *Shephard* v. *Milwaukee Gas L. Co.*, 15 Wis. 318.)

HUNT, J.—The appellant contends that there was an issue of fact tendered by the answer of respondent upon the question whether relator was or was not a tenant in possession of the premises involved. But we think that the denial of respondent, that "as to whether relator is a tenant in possession of the said premises, it had no knowledge or information upon which to found a belief, and therefore denies the same," was not good under Compiled Statutes, 1887 (Code Civ. Proc. § 89.) The court required a specific denial of the material allegations of the complaint controverted by the defendant. ' If the complaint be verified, the denial of each allegation controverted must be specific, and be made positively, or according to the information and belief of the defendant.''

While there are cases and authors holding a denial such as respondent's good under codes quite similar to the Montana Code of 1887, in California this exact question was long since decided by Justice Field for the supreme court of that state, in *Curtis* v. *Richards*, 9 Cal. 34, where it was said of a denial like appellant's: ''There are but two forms in which a defendant can controvert the allegations of a verified complaint, so as to raise an issue—first, positively, when the facts are within his own personal knowledge; and, second, upon information and belief, when the facts are not within his own personal knowledge. (Prac. Act, § 46.) These forms cannot be indiscriminately used. If the facts alleged in the complaint are presumptively within the knowledge of the defendant, he must answer positively, and a denial upon information and belief will be treated as an evasion. Thus, for example, in

reference to instruments of writing alleged in a complaint to have been executed by the defendant, a positive answer will alone satisfy the requirements of the statute. If the defendant has forgotten the execution of the instruments, or doubts the correctness of their description or copy in the complaint, he should, before answering, take the requisite steps to obtain an inspection of the originals. (Prac. Act, § 446.) If the facts alleged in the complaint are not personally within the knowledge of the defendant, he must answer according to his information and belief. In no case can an allegation of the complaint be controverted by a denial of sufficient knowledge or information upon the subject to form a belief. By the forty-sixth section of the Practice Act, as originally passed in 1851, it was provided that an allegation of the complaint must be controverted by a denial 'of any knowledge thereof sufficient to form a belief.' In practice this mode of denial was found to furnish a convenient pretext for evading the statute. In some instances, defendants became critical in their judgments, as to the extent of knowledge sufficient to form a belief, and would, without hesitation, deny, in that form, facts upon the existence of which they did not hesitate to act in other matters. In 1854, the forty-sixth section was amended to the present language, and the wisdom of the amendment is well illustrated in the present case." See, also, *San Francisco Gas Co.* v. *City of San Francisco*, 9 Cal. 467, where, on rehearing, the court adhere to the rule established in *Curtis* v. *Richards*.

The Montana Practice Act, as it appears in the Laws of 1887, having been principally taken from California, and having been modified in its requirements of what a denial must contain, and how it must be made, after the decision of the supreme court of the United States in *Maclay* v. *Sands*, 94 U. S. 586, reversing *Sands* v. *Maclay*, 2 Mont. 35, the construction of the California Code should have great weight in the construction of similar provisions of our practice act.

Bliss on Code Pleadings, § 326, says: "The pleader is not permitted to evade the statute. He must deny directly and

positively, or must deny, in the language of the statute, 'according to his information and belief.' To say that 'he has not sufficient knowledge to form a belief,' and therefore denies, will not do; nor will it be permitted to 'deny for want of information to enable them to admit.'" (Pomeroy on Code Rem. § 640; Estee's Pl. & Prac. § 3224.)

The supreme court of South Dakota, in *Cummins* v. *Lawrence Co.*, 1 S. D. 158, 46 N. W. 182, held that a denial, such as appellant has made in the case at bar, is not a denial of any fact averred, "but is a mere denial of any knowledge or information as to the alleged facts sufficient to form a belief in respect to their existence or nonexistence," and, of itself, is no defense. By statute of that state, however, such a denial is expressly authorized, and, by virtue of the statutory permission, that form of denial is held good. Maxwell Code Pl. p. 386, holds such denials good, but he does not refer to the California cases, and relies upon the single case of *State* v. *Commissioners of Hancock Co.*, 11 Ohio St., 183, to sustain his text. But it is evident, from an inspection of the Ohio case, that the statute in force was different from that of California and Montana.

It is observed that the new Codes of 1895 extend the method and form of denials, giving far more latitude apparently, than under the former practice. Code Civ. Proc. 1895, § 690. We shall follow the California cases, and hold that the statutory form of denial was the only one to be sustained. The denial, therefore, being insufficient, and no issues of fact being presented, the question for determination is : Can the appellant water company refuse to supply relator with water for general purposes at the premises involved ?

The appellant is a water company, engaged in supplying the inhabitants of the city of Butte with water, under its franchise. The city gave the corporation the right to lay its mains in its streets and alleys. The company, on the other hand, is required to supply the inhabitants of the city of Butte with water for general use, at prices specified in the franchise granted. The relator is an inhabitant of Butte, occupying

premises wholly without water for general use, and there are no other means by which water for his house may be secured, except from the appellant corporation. Ought the appellant to be allowed to refuse his tender for water in advance, and to refuse him water upon the ground that, ''by virtue of its rules and regulations adopted, it can deal only with the owners of the property requiring water to be turned on, or the agents of said owners?'' We say not.

The performance of the duty the company undertook when it accepted the franchise granted was to supply the inhabitants of the city with water. ''A waterworks company is a *quasi* public corporation. It must supply water to all who apply therefor and offer to pay rents.'' (Cook on Stock, Stockh. & Corp. Law, § 932.) The account of which the grant was given was a public purpose. (*Lumbard* v. *Stearns,* 4 Cush. 61.) Therefore, ''the grant is subject to an implied condition that the company shall assume an obligation to fulfill the public purpose on account of which the grant was made.'' (Morawitz on Priv. Corp. § 1129.)

The view that supplying a city and its inhabitants with water for general purposes is a business of a public nature, and meets a general necessity, is sustained by the great weight of authority reviewed in a learned opinion of Lord, C. J., in *Haugen* v. *Water Co.* (Or.) 28 Pac. 244. It was there said : ''The defendant, by incorporating under the statute, for the purpose of supplying water to the city and its inhabitants, undertook a business which it could not have carried on without the grant of eminent domain over the streets in which to lay its pipes. It was by incorporating for this purpose, and in accepting the grant, it became invested with a franchise belonging to the public, and not enjoyed of common right, for the accomplishment of public objects, and the promotion of public convenience and comfort. Its business was not of a private, but of public, nature, and designed, under the conditions of the grant. as well for the benefit of the public as the company.''

Certainly, the company may make reasonable rules and reg-

ulations.   Doubtless it may require payments in advance for a reasonable length of time.   It may, within reasonable limitations, cut off the supply of those who refuse to pay water rents due.   It may make regulations authorizing an examination of meters in houses at reasonable times, or adopt other reasonable rules for the regulation of its affairs.   But it has no power to abridge the obligations, assumed by it in accepting its franchise, to supply an inhabitant of Butte with water, if he pays them for it in advance, and is a tenant in the possession and occupancy of a house in need of water for general purposes.

Whether the owner has made a contract with the corporation to hold himself personally liable or not, or whether he has signed any paper agreeing to subject his property to a lien for water rents, we will not discuss in this case.   The water company in no case, however, can go beyond the powers granted to it, and such powers must be exercised in a reasonable manner; and, if it has adopted a by-law that is in conflict with its franchise, which may be termed its constitution, or is unreasonable or oppressive, the subordinate rule or by-law will be set aside.   (Thompson on Corp. § 1010 *et seq.*)

This relator was entitled to water, and to a receipt for his payment, issued directly to him, and to have the amount of his payment credited to him alone, and the by-law pleaded by the company is, as to him, clearly unreasonable; and it is immaterial to his rights whether the owner had any agreement with the company or not, or whether, as tenant, he knew of the existence of any such agreement.   The duty of the company, under its franchise, and undertaken to be fulfilled, must be performed.   The order appealed from is affirmed.

*Affirmed.*

PEMBERTON, C. J., concurs.   DE WITT, J., not sitting.