JACOB OLESON, RESPONDENT, *v.* G. R. WILSON, APPELLANT.

[Submitted January 17, 1898.  Decided March 14, 1898.]

*Statutory Construction—Statute of Limitations, Part Payment—Demand Note, When Due.*

1. STATUTORY CONSTRUCTION.—Although the construction of a statute made by the courts of the state from which the statute is taken is entitled to respectful consideration, such construction will not be followed when it is not in harmony with the spirit and policy of the legislations and decisions of this state.
   PIGOTT, J., dissenting.

2. STATUTE OF LIMITATIONS, PART PAYMENT.—Joint makers of a promissory note are not agents of each other; and a partial payment of a note past due by one joint maker does not extend the time within which the action may be brought as against a co-maker who neither authorized nor ratified such payment. (First Division of the Compiled Statutes, §§ 53 and 54, construed.)
   PIGOTT, J., dissenting.

3. DEMAND NOTE—*When Due.*—The holder of a promissory note due on demand, should demand payment within a reasonable time and before right of action is barred thereon by the statute.

4. APPEAL—*Parties.*—In an action against "A" and "B" joint makers of a promissory note, judgment was taken against "A" by default, and upon trial of the cause judgment was entered against "B" the other defendant. *Held*, that, on appeal from the judgment, "A" was not an adverse party as to "B" to the extent that notice of appeal should be served upon him.

*Appeal from District Court, Meagher County. F. K. Armstrong, Judge.*

ACTION by Jacob Oleson against Charles E. Severance and another. From a judgment for plaintiff, defendant G. R. Wilson appeals. Reversed.

Statement of the case by the justice delivering the opinion.

This is a suit, instituted in the District Court of Meagher county, to recover judgment on the following promissory note: "$3,000.  Oka, Montana, Oct. 10, 1882.  On thirty days' sight we, or either of us, promise to pay Jacob Oleson three thousand dollars with interest at $1\frac{1}{4}$ per cent. per month until paid. [Signed] Jacob Severance.  Charles E. Severance.  G. R. Wilson."

The suit was against Charles E. Severance and G. R. Wilson; Jacob Severance, the other maker of the note, having died before the commencement thereof. The complaint is such a pleading as is used ordinarily in such actions. The defendant G. R. Wilson, among other things, pleaded the statute of limitations, and in this case relies upon that statute as a perfect defense.

The replication denies that the note, as to the defendant G. R. Wilson, is barred by the statute of limitations. Judgment by default was taken against Severance.

There is an agreed statement of facts in the case as far as defendant Wilson is concerned, from which statement it appears that there were several payments of interest made on the note between the time of its execution and the 10th day of October, 1893, by the defendant Charles E. Severance, who, it is conceded, was the sole principal in said note; Jacob Severance and defendant Wilson being sureties thereon. Defendant Wilson never authorized Charles E. Severance, or any one else, to make any payments on the note for him, and never made any himself. It is conceded that he did not know anything about any payments having been made by anybody on said note; that said note was first presented to Wilson for payment on the 8th day of September, 1894, when he refused to pay the same; that plaintiff knew at the time of the execution of the note that Jacob Severance and defendant Wilson signed their names only as sureties for defendant Charles E. Severance. It is further agreed that at the time of the execution of the note Charles E. Severance was solvent and remained solvent for 10 years thereafter, during which time said note could have been collected of him; that at the time of the commencement of this suit the said Charles E. Severance was wholly insolvent, and still remains so; that on the 29th day of December, 1891, Jacob Severance died, leaving a solvent estate; that an executrix of said estate was duly appointed, and public notice to creditors given, but that said note was never presented as a claim against said estate,—the plaintiff having at all times since the death of said Jacob Sev-

erance resided within the State. of Montana,—and had he presented his claim to said executrix the same could have been collected and paid out of the estate; and that the same is now barred as against said estate.

In the lower court the plaintiff relied upon the payments of interest on the note, which were made by the principal, Charles E. Severance, to prevent the running of the statute of limitations in favor of the defendant Wilson; and the court, adopting the view of the plaintiff that said payments did prevent the running of the statute as to the defendant Wilson, rendered judgment against him for the sum of $4,200. From this judgment the defendant Wilson appeals.

*Smith & Gormley,* for Appellant.

*C. B. Nolan* and *Massena Bullard,* for Respondent.

PEMBERTON, C. J.—Counsel for appellant rely upon *First National Bank of Miles City* v. *Bullard,* 20 Mont. 118, 49 Pac. 658, for a reversal of the judgment appealed from in the case at bar. In that case this court held "that, under the statutes of Montana, one joint maker of a note, by a partial payment thereon after its maturity, without the assent or ratification of his co-makers, binds only himself, so far as an extension of the statutory period of limitations is concerned." The material facts upon which the plea of the statute of limitations is predicated are identical in both cases.

Counsel for the respondent contend that from the time of the execution of the note until the institution of this suit Sections 53, 54, First Division of the Compiled Statutes of Montana, were in force in this state, and should control in the decision of this case. These sections are as follows:

"Section 53. No acknowledgment or promise shall be sufficient evidence of a new or continuing contract, whereby to take the case out of the operation of this act, unless the same is contained in some writing signed by the party to be charged thereby; but this act shall not alter the effect of any payment of principal or interest.

"Section 54. Whenever any payment of principal or interest has been or shall be made upon an existing contract, whether it be bill of exchange, promissory note, bond or other evidence of indebtedness, if such payment shall be made after the same shall have become due, the limitation shall commence from the time the last payment was made."

Counsel for respondent further contend that these statutes were borrowed from the State of Minnesota after they had been construed by the Supreme Court of that state, and that this court is bound by the construction given them by the Supreme Court of that state in *Whitaker* v. *Rice*, 9 Minn. 13 (Gil. 1), and that, as the decision in *First National Bank of Miles City* v. *Bullard, supra,* is in conflict with the construction given these statutes in *Whitaker* v. *Rice*, by the Supreme Court of Minnesota, the construction of the Minnesota court should now be adhered to, and our own decision overruled. The question here involved was very ably and elaborately argued when *First National Bank of Miles City* v. *Bullard* was before this court, as stated therein by the learned author in the opinion. An able and exhaustive argument was also made by distinguished counsel on a petition for a rehearing in that case, which, upon due consideration, we felt compelled to deny. It is not denied now, nor at any time has it been denied, by counsel, that this court followed the "more modern and best-reasoned decisions" and authorities in the conclusion we reached in *First National Bank of Miles City* v. *Bullard.*

The argument of counsel for the respondent is, in effect, that this court is absolutely bound by the construction given these statutes by the Minnesota court, because the statutes were borrowed from that state after being construed by its court; the construction given becoming a part of the statutes when adopted by our legislature.

We admit "that the construction put upon statutes by the courts of the state from which they are borrowed is entitled to respectful consideration, and that only strong reasons will warrant a departure from it." (Endlich on Interpretation of

Statutes, § 371.) Our court has always followed this rule. But we do not admit that such construction of borrowed statutes should prevail when not in harmony with the spirit and policy of our own legislation and decisions. (*Id.*)

While it is true that *Whitaker* v. *Rice, supra,* construed the statutes under discussion, still it cannot be denied that the court, in arriving at its conclusion, was largely controlled by the language of Lord Mansfield in *Whitcomb* v. *Whiting,* 2 Doug. 652 (decided in 1781), to wit: "Payment by one is payment for all, the one acting virtually as agent of the rest; and in the same manner an admission by one is an admission by all, and the law raises the promise to pay when the debt is admitted to be due."

In *Willoughby* v. *Irish,* 35 Minn. 63, 27 N. W. 379, the Supreme Court of Minnesota completely overruled *Whitaker* v. *Rice, supra,* and repudiated the doctrine declared by Lord Mansfield in *Whitcomb* v. *Whiting, supra,* upon which the decision is so largely predicated.

In *Willoughby* v. *Irish, supra,* which overruled *Whitaker* v. *Rice, supra,* the Supreme Court of Minnesota said: "Recurring to the pivotal point in this case, if there must, then, be a new promise, express or implied, to sustain an action, can one of several joint debtors, from the mere fact of the existence of the joint liability, and having no authority in respect to each other, except such as results from that relationship, by his own several act or agreement create or renew a liability as against all such debtors for a debt otherwise barred by limitation? Logically, and upon principle, there can be but one answer to this question. No such authority or agency exists, or can be implied, from the joint contract, as will authorize one to act for and bind the others, so as to renew or extend their liability. Where the relation is merely that of joint debtors, neither is the agent of the other to make a new contract with the creditor, or to bind the others by a new promise changing or affecting their legal rights, or giving such creditor a right of action against them which he would not otherwise have. And nothing can be added to the exhaus-

tive and satisfactory discussion of the subject in *Bell* v. *Morrison, supra,* and *Van Keuren* v. *Parmelee,* 2 N. Y. 523, 51 Am. Dec. 322, and notes; *Shoemaker* v. *Benedict,* 11 N. Y. 176, 61 Amer. Dec. 95. \* \* \* In *Bell* v. *Morrison,* the debt had already been barred when the new promise was alleged to have been made, and a further distinction is suggested between cases of that class and those where payments or new promises have been made before the statute has run; and upon this distinction Judge Denio grounds his dissent in *Shoemaker* v. *Benedict, supra.* But it is founded upon no principle. If the agency exists in one case, it must in the other, and the same authority is required to bind one joint debtor, by the promise or partial payment of his co-debtor, before as after the six years have elapsed."

It may be said, in reply to this, that when *Willoughby* v. *Irish* was decided the legislature of Minnesota had changed the statutes from what they were when *Whitaker* v. *Rice* was decided, and that we have the original statutes, and are bound by the construction given them in *Whitaker* v. *Rice.* It is true that *Willoughby* v. *Irish* was decided under the amended statutes. But it is also true that *Willoughby* v. *Irish* repudiates the doctrine of agency or authority of the joint debtors to bind each other by part payment, announced as the basis, largely, of the opinion in *Whitaker* v. *Rice,* which doctrine is now without the indorsement of the best authorities, and, perhaps, would long since have been discarded entirely, had it not owed its paternity, as well as weight, to the great name of Mansfield.

The Minnesota situation may, therefore, be said to be this : In *Whitaker* v. *Rice,* decided in 1864, the Supreme Court of that state, under statutes just like the Montana statutes, held that a part payment of an obligation by one joint debtor prevented the running of the statute as to all. This decision, while construing the statutes then in force, was based largely on the theory that all the joint debtors were agents for each other, and had authority to extend the joint liability as to all by such partial payments without the consent, knowledge, or

ratification of their co-makers. *Willoughby* v. *Irish*, which was decided under the statutes as amended, wholly repudiates the doctrine of the agency of the co-makers, and their authority to bind each other, as announced in *Whitaker* v. *Rice*. So that, while *Willoughby* v. *Irish* was rendered under different statutes than those construed in *Whitaker* v. *Rice*, it also wholly overrules and repudiates the principle upon which *Whitaker* v. *Rice* was so largely based; and, if the Supreme Court of Minnesota is not bound by the principle announced in *Whitaker* v. *Rice*, we ought not to be. Why should we be held to a construction on Minnesota statutes which have been overruled and discarded by that state's own Supreme Court?

But we deem it useless to consider this question at any greater length. It must be conceded that the decision in *First National Bank* v. *Bullard* is in harmony with the best recent decisions and authorities on this question, and we do not feel constrained to depart from the rule therein announced. (See *Cowhick* v. *Shingle* (Wyo.) 37 Pac. 689; *Steele* v. *Souder*, 20 Kan. 39.)

There is some discussion as to when the note sued on became due, counsel for respondent contending it did not become due, as to appellant, until 30 days after demand, and that no demand was made of him until the 8th day of September, 1894. We think plaintiff was bound to make demand in a reasonable time. The plaintiff could not indefinitely prolong the time in which he might sue by voluntarily failing to do the things he was required to do before an action could be brought. We think he was, at any rate, required to demand payment before the right of action was barred by the statute. (Story on Promissory Notes, §§ 207 and 208; Tiedeman on Commercial Paper, § 296; *Hintrager* v. *Traut* (Iowa) 27 N. W. 807; *Palmer* v. *Palmer*, 36 Mich. 487; *Keithler* v. *Foster*, 22 Ohio St. 31.)

We think there is no merit in the contention of respondent that this appeal should be dismissed because no notice thereof was given to defendant Charles E. Severance. Severance was

not an adverse party to appellant, in the sense that he was entitled to notice.

The judgment appealed from is reversed, and the cause remanded, with directions to the District Court to enter judgment in favor of the appellant.

*Reversed and Remanded.*

HUNT, J., concurs.

PIGOTT, J.—I dissent. I am constrained to the opinion that the conclusion reached in *First National Bank* v. *Bullard*, 20 Mont. 118, 49 Pac. 658, was erroneous for two reasons : First, because the court refused to follow the interpretation put upon the provisions of Section 54, First Division, Compiled Statutes, 1887, by the Supreme Court of Minnesota; and secondly, because, independently of the Minnesota construction, the section is not reasonably susceptible of the interpretation given by this court.

1. Section 54, *supra*, was borrowed from the statutes of Minnesota. Prior to its adoption it had been interpreted by the Supreme Court of that state, which had held that the limitation would commence from the time of the last payment after maturity upon an existing written evidence of indebtedness; that payment by one of the joint debtors of interest due on such contract would initiate a new period of limitation as to all of the debtors, notwithstanding the debtor so paying was the principal, and his co-debtors mere sureties, and despite the fact that the payment was made by him without their knowledge or consent. (*Whitaker* v. *Rice*, 9 Minn. 13 Gil. 1.)

The rule declared in *First Nat. Bank* v. *Bell S. & C. Min. Co.*, 8 Mont. 46, 19 Pac. 403, is that, when a particular statute has been adopted in this state from the statutes of another, after a judicial interpretation has been placed upon it by the parent state, the courts of this state are bound by the interpretation or construction of the courts of the state whence it was adopted, unless the circumstances of the people of this state are so different as to require the application of another

rule. To the same effect is *Territory* v. *Stears*, 2 Mont. 324. At page 330 the court say: "Our statute is a re-enactment of that of California and the construction placed upon it by the California courts might be said to be enacted with the statute." The same principle is announced in *Lindley* v. *Davis*, 6 Mont. 453, 13 Pac. 118; *Stackpole* v. *Hallahan*, 16 Mont. 40, 40 Pac. 80; *Murray* v. *Heinze*, 17 Mont. 353, 42 Pac. 1057, and 43 Pac. 714; *State* v. *O'Brien*, 18 Mont. 1, 43 Pac. 1091, and 44 Pac. 399; *State ex rel. Milstead* v. *Butte City Water Co.*, 18 Mont. 199, 44 Pac. 966, and in *Largey* v. *Chapman*, 18 Mont. 563, 46 Pac. 808. It is not claimed that there was anything in our condition at the time the statute was adopted, or has been since, warranting the rejection of the doctrine established in Minnesota at the time the statute was adopted. This section was adopted in 1865, and was re-enacted by succeeding legislatures, and otherwise continued in force in the Territory and State of Montana until the Codes went into effect, July 1, 1895. In Minnesota, however, the statute of which our Section 54 is substantially a copy, was repealed in 1866. Subsequently, in 1886, the Supreme Court of Minnesota decided *Willoughby* v. *Irish*, 35 Minn. 63, 27 N. W. 379. The sole point decided in that case was that, under a statute corresponding word for word with Section 53, First Division, Compiled Statutes, 1887, a partial payment by one maker of a note, before the statute barred the remedy, was inoperative to prevent its running as to the other makers. The court did not construe the section which had been theretofore repealed. That section was not involved. *Whitaker* v. *Rice* was not overruled by the Willoughby case, either in whole or in part. Any unfavorable comment upon the former case was clearly *obiter*; but were it otherwise, I find it impossible to assent to the course of reasoning pursued by the opinion in the case at bar. Montana took Section 54 from the statutes of Minnesota with the interpretation then given it,—which it then bore,—and not with that attempted to be injected into it a score of years after its repeal by way of argument in considering a different statute. It is to be

borne in mind, also, that in the period between the adoption of Section 54 and its repeal in Montana, on July 1, 1895, rights had been acquired in reliance upon the section as construed when adopted. That construction is as binding as if verbally incorporated into the statute.

2. The provisions of Section 54 were peculiar to three states—Minnesota, Oregon, and Montana. In *Partlow* v. *Singer*, 2 Or. 307, and *Sutherlin* v. *Roberts*, 4 Or. 378, a statute of Oregon identical with Section 54, *supra*, received careful and thorough consideration, and was interpreted as in *Whitaker* v. *Rice*. The Supreme Court of the United States in *Cross* v. *Allen*, 141 U. S. 528, 12 Sup. Ct. 67, treated the subject upon principle, and with reference to the Oregon statute, but without relying upon the judicial construction of the law by the courts of that state, and held to the Minnesota interpretation. The reasons advanced by these courts are cogent, and, to my mind, unanswerable. It seems to me that this court has, in the Bullard case and the one at bar, practically eliminated Section 54 from the statutes, by refusing to give effect to its clear language and unmistakable import. I am satisfied that Section 53 was intended for one purpose, and that Section 54 was designed for another and different purpose. If the majority opinion be correct, I cannot conceive why Section 54 was enacted, since Section 53 is, in the opinion of the court, ample for all the ends intended to be attained by the other section.

*Stare decisis* ought not to be applied, for the error may be now corrected without injury or hardship, it being apparent that since the decision in the Bullard case no rights can have arisen in favor of makers of promissory notes which could be affected by overruling the doctrine there announced. The privilege of defeating a just debt by interposing the defense of the statute of limitations is not a vested right. (*Campbell* v. *Holt*, 115 U. S. 620.) For these reasons, I think the judgment should be affirmed.